IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

CATHY J. WEEKS                                                    PLAINTIFF

V.                                                    CIVIL ACTION NO. 1:05CV154-SAA

JO ANNE B. BARNHART, COMMISSIONER
OF SOCIAL SECURITY                                                    DEFENDANT

## MEMORANDUM OPINION

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the

decision of the Commissioner of Social Security denying the application of plaintiff Cathy J.

Weeks for a period of disability and disability insurance benefits under sections 216(I) and 223 of

the Social Security Act. In accordance with the provisions of 28 U.S.C. § 636(c) both parties

consented to have a United States Magistrate Judge conduct all proceedings in this case,

including an order for final judgment. Therefore, the undersigned has authority to issue this

opinion and the accompanying final judgment.

## I. FACTUAL AND PROCEDURAL HISTORY

The plaintiff was born on September 28, 1952 and was forty-five years old at the time of

the alleged onset date of disability, August 1, 1998. She was forty-nine on March 31, 2002, the

date that she last met the disability insured status requirements of the Social Security Act. She

completed high school and one semester of college. The plaintiff's past relevant work has been

as an operations manager for an air freight company; a temporary worker; and an advertisement

set-up installer. She filed her application for disability insurance benefits and SSI on January 10,

2003. In her applications, plaintiff alleged a disability due to hypertension, hyperlipidemia,

1

hyperthyroidism, coronary artery disease, gastroenterological reflux disease and borderline diabetes. (Tr. 16) The Social Security Administration denied plaintiff's application initially and on reconsideration. Following a hearing, on October 4, 2004, the Administrative Law Judge ("ALJ") entered her decision holding that the plaintiff was not disabled. On April 15, 2005, the Appeals Council acknowledged the receipt and review of additional evidence provided by the plaintiff and issued an order denying the plaintiff's request for review. Thereafter, the plaintiff filed the present action with this court. The ALJ's final hearing decision is now ripe for review.

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining her burden at each of the first four levels then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[3] Second, the plaintiff must prove her impairment is "severe" in that it "significantly limits her physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude the plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (1998).[5] Fourth, the

---

[1]See 20 C.F.R. § 404.1520 (1998).

[2]Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).

[3]20 C.F.R. § 404.1520(b) (1998).

[4]20 C.F.R. § 404.1520(c) (1998).

[5]20 C.F.R. § 404.1520(d) (1998). If a claimant's impairment meets certain criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. §404.1525 (1998).

plaintiff bears the burden of proving she is incapable of meeting the physical and mental demands of her past relevant work.[6] If the plaintiff is successful at all four of the preceding steps the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[7] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that she cannot, in fact, perform that work.[8]

By decision dated October 26, 2004, the ALJ found that the plaintiff suffered from "severe" impairments in the form of hypertension, diet controlled diabetes mellitus and hypothyroidism, but she did not have an impairment or combination of impairments medically equal to the listings in Appendix 1, Subpart P, Regulation No. 4, and she was not under a disability as defined by the Social Security Act. (Tr. 16, Finding Nos. 3 and 4). On appeal, the Appeals Council considered all the evidence before it, including a letter from Dr. Andrew Kerby dated December 2, 2004, medical records from Madigan Army Medical Center from July 1993 to September 1996 and the brief of plaintiff's attorney dated December 27, 2004, but found no basis for changing the ALJ's decision.

On appeal to this court the plaintiff makes the following arguments: (1) the ALJ erred in holding that the medical diagnosis of an impairment may not be made after its actual onset; (2) the ALJ failed to afford proper weight to Dr. Melanie Wallace, one of plaintiff's treating physicians; (3) the ALJ's decision not to afford controlling weight to plaintiff's treating

---

[6]20 C.F.R. § 404.1520(e) (1998).

[7]20 C.F.R. § 404.1520(f)(1) (1998).

[8]*Muse*, 925 F.2d at 789.

physicians was not supported by substantial evidence; (4) the ALJ's decision not to afford any weight to the opinion of Dr. Andrew Kerby, another of plaintiff's treating physicians, because Dr. Kerby had never treated the plaintiff before expiration of plaintiff's insured status; (5) the ALJ erred by requiring end organ damage in diabetes and/or hypertension; (6) the decision is not supported by substantial evidence; and (7) the ALJ erred by failing to consider the combined effect of all the impairments on the plaintiff. These arguments fall into three general categories: whether the ALJ's decision was based on substantial evidence; whether the ALJ failed to afford proper weight to plaintiff's treating physicians, and whether the ALJ properly considered the combined effects of plaintiff's impairments. The court will address the plaintiff's arguments.

## II. STANDARD OF REVIEW

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further stated that substantial evidence:

> must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'

*Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Further, in Social Security disability review cases, where § 405(g) governs

the standard of review, *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir.1964), the Fifth Circuit

has held that appellate review is limited to two issues: (1) whether the Commissioner applied the

proper legal standards; and (2) whether the Commissioner's decision is supported by substantial

evidence on the record as a whole. *Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2001) *citing*

*Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir.1994); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th

Cir.1992). This court may not overturn the Secretary's decision if it is supported by substantial

evidence–"more than a mere scintilla" -- and correctly applies the law. *Morris* at 745; *Anthony*,

954 F.2d at 292.

Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence

is found to support the decision, the decision must be affirmed even if there is evidence on the

other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not re-weigh

the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner.

*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence

preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th

Cir. 1994); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the

evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir.

1994).

### III. DISCUSSION

#### A. Substantial Evidence

The plaintiff's first and fifth arguments, in sum, are that the decision of the ALJ is not

supported by substantial evidence; specifically, plaintiff claims that the decision of the ALJ is

incorrect in holding that the medical diagnosis of an impairment should not be credited where it

is made after its actual onset and that the ALJ was incorrect in requiring end organ damage in diabetes and hypertension.

Where substantial evidence – evidence that a reasonable mind would accept as adequate to support the decision – supports the administrative finding, the court may then only review whether the administrative law judge applied the proper legal standards and conducted the proceedings in conformity with the applicable statutes and regulations. *Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir.1993), citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *see also* Hernandez v. Heckler, 704 F.2d 857, 859 (5th Cir.1983). Of course, this standard of review is not a rubber stamp for the Commissioner's decision. It involves more than a basic search for evidence supporting the findings of the Commissioner. The court must scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting said findings. *Austin v. Shalala*, 994 F.2d at 1174, _citing_ *Tome v. Schweiker*, 724 F.2d 711, 713 (8th Cir.1984). *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951), *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir.1984).

The record in this cause leaves no doubt that the plaintiff suffers from hypertension, hypothyroidism and diabetes mellitus; however, she is not entitled to benefits unless she is "disabled" as that term is defined by the Social Security Act, 42 U.S.C. §§ 423(d)(1)(A). *Jones v. Heckler*, 702 F.2d 616 (5th Cir.1983); *See also Heckler v. Campbell*, 461 U.S. 458, 459-61, 103 S.Ct. 1952, 1953-54, 76 L.Ed.2d 66 (1983). The term "disability" is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not

less than 12 months." 42 U.S.C. §§ 416(I)(1), 423(d)(1)(A). In the instant case, it is important to recognize that the plaintiff's insured status expired on March 31, 2002. Accordingly, it is necessary that the plaintiff show that she was disabled during the time period between her alleged onset date, August 1, 1998 and March 31, 2002. The existence of such disability must be demonstrated by medically acceptable clinical and laboratory diagnostic findings, and the overall burden of proof rests upon the claimant. 42 U.S.C. §§ 423(d)(3), (d)(5); *Jones v. Heckler*, 702 F.2d at 620.

After evaluating the medical evidence, including medical records of Drs. Wallace and Kerby which were generated after the disability onset date, the ALJ specifically found the plaintiff suffers from impairments, but that no single impairment nor combination of her impairments was of a non-disabling nature. The ALJ concluded that, "[the plaintiff] had the residual functional capacity to perform a significant range of sedentary work," with the nonexertional limitation of being able "to elevate her feet to foot stool level occasionally." (Tr. 17, finding no. 11; Tr. 14). Further, the ALJ found that the plaintiff's RFC precluded her past relevant work, but, based on the testimony of a vocational expert (VE) and using Medical-Vocational Rule 201.22 as a framework, the ALJ found that there was a significant number of jobs in the national economy that she could perform. *Id.* Finding No. 12. Such jobs include work as an employment interviewer, a customer service representative and a personnel clerk. In so finding, the ALJ determined that plaintiff was not disabled under the Social Security Act.

In order to be eligible for benefits under Title II, a plaintiff must establish that she became disabled on or before the date her insured status terminated. *King v. Barnhart*, 372 F. Supp 2d 932, 939 (S. D. Tex 2005); *see also Barraza v. Barnhart,* 61 Fed.Appx. 917, 2003 WL 1098841,

at *1 (5th Cir.2003) (citing *Ivy v. Sullivan,* 898 F.2d 1045, 1048 (5th Cir.1990)). "Evidence showing a degeneration of a claimant's condition after the expiration of his Title II insured status is not relevant to the Commissioner's Title II disability analysis." *See id.* (citing *Torres v. Shalala,* 48 F.3d 887, 894 n. 12 (5th Cir.1995)). However, an ALJ "may not refuse to consider retrospective medical diagnoses uncorroborated by contemporaneous medical reports but corroborated by lay testimony." *Id.* (citing *Likes v. Callahan,* 112 F.3d 189, 190-91 (5th Cir.1997)).

In *Likes v. Callahan* the Fifth Circuit held that "[r]etrospective medical diagnoses constitute relevant evidence of pre-expiration disability, and properly corroborated retrospective medical diagnoses can be used to establish disability onset dates." 112 F.3d 189, 191 (5th Cir. 1997). However, in *McClendon v. Barnhart,* 184 Fed.Appx. 430 (5th Cir. 2006)(*per curiam*), the court limited the use of retrospective opinions:

> While a retrospective opinion can prove the existence of a disability, the retrospective opinion must refer clearly to the relevant period of disability and not simply express an opinion to the claimant's current status. Records describing a claimant's current condition cannot be used to support a retrospective diagnosis of disability absent evidence of an actual disability during the time of insured status.

Thus, the question before the ALJ must first be whether the plaintiff was in fact "disabled" within the meaning of that term under the Social Security Act prior to the expiration of her insured status. Pursuant to 42 U.S.C § 423(d)(1)(A), disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." Thus, although a retrospective diagnosis in combination with testimony or other

8

subjective evidence can be used to establish the existence of an *impairment* before expiration of plaintiff's insured status, there must also be evidence to establish that the impairment had a *disabling effect* before the expiration of the claimant's insured status in order for benefits to be awarded. *See* Barnhart v. Walton 535 U.S. 212, 122 S.Ct. 1265 (2002); *McClendon v. Barnhart*, 184 Fed.Appx. 430 (5th Cir. 2006)(*per curiam*). A retrospective medical diagnosis, such as the diagnosis by Dr. Kerby of the plaintiff's "probable diabetic peripheral neuropathy and post prandial diabetes mellitus," "constitutes relevant evidence concerning the degree of disability prior to the expiration of the claimant's insured period, but such retrospective medical opinions alone will usually not suffice unless the claimed onset date is corroborated, as by subjective evidence from lay observers like family members." (Tr. 156); 3 Soc. Sec. Law & Prac. § 39:19.

In this case, the plaintiff may rely on the opinion of Dr. Kerby as to the degree of her disability currently and may then use his diagnosis and her own testimony, testimony of others or other such supporting evidence to corroborate and support her contention that the impairments were present and diagnosable before March 31, 2002. However, there was, in the court's opinion, insufficient evidence in the record of this case for the ALJ to have concluded that plaintiff's impairment disabled her by that date. The medical evidence that was before the ALJ did not include the December 2004 report of Dr. Kerby or any of the medical records from Madigan Army Medical Center. Therefore, the undersigned cannot conclude that the ALJ's decision, based on the evidence before her, was not based on substantial evidence.

The error which requires reversal and remand of this case is rather that of the Appeals Council. The July 1996 records from Madigan Army Medical Center, which were presented to

Appeals Council, provide objective corroborating evidence that the plaintiff suffered at that early date from pain and swelling in her legs and ankles. Furthermore, Dr. Kerby's report, also presented to the Appeals Council, states that in his opinion there was evidence to show a strong suspicion that plaintiff's post prandial diabetes mellitus and her diabetic neuropathy had been developing for a period of 10 to 15 years (which would include – indeed, predate – the relevant period). (Tr. 179 - 189; Letter of Dr. Kerby 179 - 180). Plaintiff testified at the hearing that she began suffering the symptoms of diabetic neuropathy in 1994, and that the symptoms grew progressively more severe until 1998, when her pain became constant and she became unable to stay on her feet for more than 15 or 20 minutes at a time. (Tr. 271-272, 278.)

After review of the record as a whole, the undersigned finds that the evidence submitted to the Appeals Council was likely sufficient to meet the requirement of "substantial evidence" necessary to show that the plaintiff suffered from an impairment "of such severity that [s]he is not only unable to do [her] previous work but cannot ... engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) (Title II); *see also* Barnhart v. Walton 535 U.S. 212, 218  122 S.Ct. 1265, 1270 (2002). The evidence was, at least, sufficient to warrant remand by the Appeals Council to the ALJ for review of the newly submitted evidence and further development of testimony or other corroborating evidence to aid in determining the severity of the impairment and whether it, as of March 31, 2002, would rise to the level of disability under the Act. Accordingly, the court concludes that the ALJ's decision was supported by substantial evidence on the record before her, but in light of evidence submitted to the Appeals Council, this case should be remanded to the ALJ for further review.

**B.** **Failure To Afford Proper Weight to Treating Physicians**

The plaintiff's next argument is that the ALJ failed to afford proper weight to the opinion

of Dr. Melanie Wallace, one of plaintiff's treating physicians, and that her failure to afford any

weight to the opinion of Dr. Andrew Kerby, another of plaintiff's treating physicians, was also

clear error.  In sum, the plaintiff argues the ALJ's failure to afford controlling weight to

plaintiff's treating physicians was not supported by substantial evidence.

In her decision, the ALJ states:

> "The Administrative Law Judge rejects the opinion of Dr. Wallace in Exhibit 10F[9]
> that the claimant is unemployable because that opinion is inconsistent with her
> treatment notes for the period at issue.  The Administrative Law Judge also rejects
> the opinion of Dr. Kerby in Exhibit 13F[10] that the claimant can perform less than
> sedentary work.  The doctor has treated the claimant only since July 2003, and has
> no basis on which to describe her limitations for the period on and prior to March
> 31, 2002."

(Tr. 14).   In order for an ALJ to properly afford lesser weight to the medical opinions of a

treating physician, she must "perform a detailed analysis of the treating physician's views under

the criteria set forth in 20 C.F.R. §404.1527(d)(2)." *See Newton v. Apfel*, 209 F.3d 448, 453 (5th

Cir. 2000).  The fact that the ALJ did not follow this criteria, according to the plaintiff, makes her

failure to afford controlling weight to the opinions of the treating physician an error as a matter

of law.  The government responds that while the *Newton* criteria are generally applicable in a

case such as the one at bar, such considerations are not mandatory because the opinions

---

[9]Exhibit 10F is a letter from Dr. Melanie Wallace, dated May 5, 2003, which states that in
her opinion the plaintiff, "due to multiple medical problems, . . . will be unemployable." (Tr.
116).

[10]Exhibit 13F is a letter from Dr. Andrew Kerby, dated September 30, 2004, that states
that he has treated plaintiff since July 16, 2003 and that he considers her "incapable of
maintaining employment due to her multiple medical problems" and a Medical Source Statement
completed by Dr. Kerby. (Tr. 156 - 162).

expressed by Dr. Wallace are not supported by medical evidence in the record and those expressed by Dr. Kerby are not based on the time period in issue. Therefore, according to the government, the ALJ was not be required to follow *Newton* to the letter.

The Fifth Circuit has held that generally "a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 175-76 (5ᵗʰ Cir. 1995); 20 C.F.R. § 404.1527(d)(2). Although the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5ᵗʰ Cir. 1990). "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5ᵗʰ Cir. 1987) (citation omitted). Good cause may exist to allow an ALJ to discount the weight of evidence of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *Newton v. Apfel*, 209 F.3d 448, 456 (5ᵗʰ Cir. 2000).

In *Newton*, the Fifth Circuit noted that there are several factors that the ALJ must consider before declining to give evidence of a treating physician controlling weight:

> (1) the physician's length of treatment of the claimant,
> (2) the physician's frequency of examination,
> (3) the nature and extent of the treatment relationship,
> (4) the support of the physician's opinion afforded by the medical evidence of record,
> (5) the consistency of the opinion with the record as a whole; and
> (6) the specialization of the treating physician.

*See* 20 C.F.R. § 404.1527(d)(2). Social Security Administration Regulations provide that the SSA "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion," and the regulations list factors an ALJ must consider to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to "controlling weight." *See Id.* The regulation is construed in Social Security Ruling ("SSR") 96-2p, which states:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.

*Newton* at 456.

Pursuant to SSR 96- 5p, an ALJ must provide appropriate explanations when the treating physician's opinions are not afforded controlling weight. *Id.* In the instant case, the ALJ clearly reviewed the records and opinions provided by both Drs. Wallace and Kerby and declared the reasons for failing to follow the doctors' opinions in her decision. However, the ALJ failed to follow specifically the criteria laid out in *Newton*. In fact, the ALJ neither referred to the *Newton* criteria, nor did she clearly consider each of the § 404.1527(d) factors. Instead, she simply referenced each physician's opinions and made a conclusory determination that those opinions were not supported by the findings or history of treatment. (Tr. 14)

The court considers objective medical facts, diagnoses and opinions of treating and examining physicians, the claimant's subjective evidence of pain and disability, and the claimant's age, education, and work history when considering whether the ALJ's decision is

supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam) (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)). While the ALJ is afforded discretion when reviewing facts and evidence in a cause, the ALJ is not qualified to interpret raw medical data in functional terms, and if an ALJ reaches conclusions as to a claimant's physical exertional capacity without a physician's assessment, and certainly in contradiction of the treating physician's medical assessment, then the ALJ's decision is not supported by substantial evidence. *Perez v. Secretary of Health and Human Services*, 958 F.2d 445, 446 (1st Cir. 1991) (citations omitted); *see Richardson v. Perales*, 402 U.S. 389, 408 (1971) (upholding the use of testimony from vocational expert because the ALJ is a layman). Finally, where an ALJ fails to provide appropriate explanations in not affording proper weight to a plaintiff's treating physicians' opinions, the cause must be remanded. *Newton* 209 F. 3d at 456.

In the instant case, again, the court cannot conclude that the ALJ's decision to discount the opinions of Dr. Wallace and Dr. Kerby was in error. It is clear, from the explanation of and the foundations for the ALJ's decision, that the ALJ acted within her discretion to afford lesser weight to the opinions of plaintiff's treating physicians based on the information in the record at the time of the hearing and decision. The error, again, is one by the Appeals Council which, faced with new evidence not available to the ALJ, should have remanded the case to the ALJ to afford her an opportunity to consider the new evidence and its impact on the case in light of *Newton*.

**C.**     **Consideration Of Plaintiff's Impairments' Combined Effects**

The plaintiff alleges that the ALJ failed to consider all of the plaintiff's impairments and their combined effects on her ability to work. In this case, there is no doubt that the ALJ

carefully considered all of the plaintiff's complaints, both alone and in combination. She addressed in detail plaintiff's complaints, diagnosed impairments within the pertinent time frame, diagnosed impairments subsequent to the time in issue, and the effect of those, the medications for each, and the plaintiff's diet and her ability, education and age. The ALJ's task was not an easy one; the time frame from August 1, 1998 to March 31, 2002, is limited and the particularity with which the ALJ analyzed the evidence is commendable. Nevertheless, the evidence supplied by the plaintiff to the Appeals Council, specifically the medical records from Madigan Army Hospital and the Letter from Dr. Kerby, could have had an effect on the ALJ's analysis of the impairments, their severity and how their combined effects might have affected the plaintiff. Accordingly, the court holds that the ALJ should likewise be afforded an opportunity to consider this case in light of all relevant facts and evidence in order to properly make a finding as to the plaintiff's impairments.

## IV. CONCLUSION

For the forgoing reasons, the undersigned finds that although the decision of the ALJ wass supported by substantial evidence before her at the time, in light of the plaintiff's submission of new evidence that is material to the plaintiff's claims, the case should be remanded for additional consideration consistent with this opinion. A final judgment will issue accordingly.

This, the 30th day of March, 2007.

/s/ S. ALLAN ALEXANDER
UNITED STATES MAGISTRATE JUDGE